NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190849-U

NO. 4-19-0849

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 24, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.C., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Schuyler County |
| Petitioner-Appellee, | ) | No. 15JA2 |
| v. | ) | |
| Diamond C., | ) | Honorable |
| Respondent-Appellant). | ) | Scott Jones Butler, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the trial court's fitness and best-interest
findings were not against the manifest weight of the evidence.

¶ 2     In October 2019, the trial court terminated the parental rights of respondent father,

Diamond C., as to his daughter, A.C. (born June 23, 2015).  Respondent mother is not a party to

this appeal.  On appeal, respondent argues the court's fitness and best-interest findings were

against the manifest weight of the evidence.  For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                            A. Initial Proceedings

¶ 5     In December 2015, the State filed a petition for adjudication of wardship, alleging

A.C. was neglected where (1) respondent mother subjected A.C. to an injurious environment due

to her drug abuse and (2) A.C. was located at the residence of respondent who had an order of

protection in Schuyler County case No. 15-OP-20, in which A.C. was listed as a protected party. 705 ILCS 405/2-3(1)(a) (West 2014). The allegations of neglect stemmed from a December 8, 2015, incident where respondent mother showed up to a hospital under the influence of THC, methamphetamine, amphetamines, and benzodiazepines and had no idea where her children were. Ultimately, A.C. was located at the residence of respondent, who had an order of protection against him in which A.C. was listed as a protected party (Schuyler County case No. 15-OP-20).

¶ 6        Following a shelter care hearing, the trial court granted the Department of Children and Family Services (DCFS) temporary custody of A.C. At a March 2016, adjudicatory hearing, respondent stipulated to the allegations of neglect in the State's petition. In April 2016, the trial court held a dispositional hearing. Following the dispositional hearing, the trial court (1) found respondent unfit, (2) made A.C. a ward of the court, and (3) granted DCFS guardianship and custody.

¶ 7        On December 18, 2015, respondent was arrested and incarcerated for unlawful delivery of a controlled substance. Respondent was released from the Department of Corrections (DOC) in June 2018 but was reincarcerated in July 2018 for violating an order of protection by visiting A.C. Respondent was released from the Department of Corrections (DOC) in August 2019.

¶ 8                        B. Termination Proceedings

¶ 9        In August 2019, the State filed a petition to terminate respondent's parental rights. The State alleged respondent failed to (1) make reasonable efforts to correct the conditions that were the basis of the removal of A.C. from respondent during any nine-month period after the adjudication of neglect, specifically: March 23, 2016, to December 23, 2016; December 23,

- 2 -

2016, to September 23, 2017; September 23, 2017, to June 23, 2018; and June 23, 2018, to March 23, 2019 (750 ILCS 50/1(D)(m)(i) (West 2014)); and (2) make reasonable progress toward the return of A.C. within any nine-month period after the adjudication of neglect, specifically: March 23, 2016, to December 23, 2016; December 23, 2016, to September 23, 2017; September 23, 2017, to June 23, 2018; and June 23, 2018, to March 23, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2014)).

¶ 10                                        1. *Fitness Hearing*

¶ 11         In August 2019, the trial court conducted a bifurcated hearing on the petition for termination of parental rights, first considering respondent's fitness. The parties presented the following relevant testimony.

¶ 12                                        a. William Schodroski

¶ 13         William Schodroski, a caseworker at Chaddock, testified he served as the caseworker on respondent's case starting in June 2018. Schodroski testified that in June 2018, respondent had an order of protection against him listing A.C. as a protected party. In June 2018, respondent communicated with respondent mother and engaged in unauthorized visits with A.C. in violation of the order of protection.

¶ 14         Schodroski testified that as part of his service plan respondent was required to complete a substance abuse assessment, a domestic violence assessment, anger management classes, and mental health treatment. Respondent completed an anger management class while in the DOC but had not completed a substance abuse assessment at the time of the fitness hearing. Schodroski testified respondent completed a domestic violence assessment and mental health treatment after his release from the DOC.

¶ 15    Schodroski testified that besides the month of June 2018, respondent was incarcerated throughout the pendency of the case. From March 23, 2016, to March 23, 2019, there was never a time when it was reasonable to return A.C. to respondent. Schodroski testified respondent never made reasonable progress or reasonable efforts toward the return of A.C. to his care. Schodroski testified that respondent expressed interest in gaining custody of A.C. after his incarceration. Throughout the case, respondent contacted A.C. through letters and phone calls, even with the order of protection in place.

¶ 16                          b. Respondent Mother

¶ 17    Respondent mother testified that she obtained more than one order of protection against respondent. Specifically, in 2015 she obtained an order of protection against respondent based on threats he made. She testified, "I felt threatened." In 2017, respondent mother obtained an order of protection against respondent because he sent threatening letters. Respondent mother testified the letters said, "he would take [A.C.]. He was very angry because he did not get to see [A.C.]. He thought I was to blame for that, so he made some threats of harming me and taking off with [A.C.]." Respondent mother testified she reported instances where respondent tried to contact her and A.C.

¶ 18                          c. Respondent

¶ 19    Respondent testified he was released from the DOC on August 9, 2019. He testified that since his release he completed a mental health evaluation and was engaged in a substance abuse assessment. Respondent indicated that while in the DOC, he completed classes in substance abuse, anger management, and an Incarcerated Dads parenting seminar. Respondent testified that Chaddock brought A.C. to see him while incarcerated but that eventually visits were cut off.

¶ 20      Respondent admitted he was the respondent in more than one order of protection granted to respondent mother in 2015 and 2017, and that he violated those orders of protection. Respondent also admitted that from March 23, 2016, to March 23, 2019, there was no time when A.C. could have been returned to his care.

¶ 21                              d. Cathy C.

¶ 22      Cathy C., respondent's mother, testified that from the beginning of the case she was willing to provide placement for A.C. Cathy C. testified respondent sent one letter to her home for A.C.

¶ 23                          e. Trial Court's Findings

¶ 24      After hearing the evidence, the trial court found, by clear and convincing evidence, respondent unfit on both grounds. Specifically, the court found respondent failed to make reasonable progress during every nine-month period. The court found respondent failed to make reasonable efforts during the last nine-month period. The court noted that respondent was never in a position to care for A.C. because he was in the DOC. Regarding services, the court stated,

> "There were certain things you couldn't do because [DOC]
> wouldn't let you because you were back on parole hold based on a
> violation of an order of protection
>
>      And some of the—some of the services that you obtained in
> [the DOC], I don't know and I don't believe adequate. They
> were—they did not comply with the service plan. Parenting for
> incarcerated parents is different than a long-term integrated and in-
> depth parenting plan."

¶ 25                              2. *Best-Interest Hearing*

¶ 26          In October 2019, the trial court held a separate best-interest hearing.  The parties presented the following relevant testimony.

¶ 27                                    a. Cathy C.

¶ 28          Cathy C. testified that A.C. came into her care in December 2015 and remained in her care for 18 months until she went back to respondent mother.  A.C. came into Cathy C.'s care again in September 2019.  Cathy C. testified that A.C. and her sister currently resided with her.

¶ 29          Cathy C. testified she had a good relationship with A.C.  Cathy C. also testified A.C. and her sister got along well and that her sister acted as a protective older sister.  Cathy C. indicated she would abide by court orders and asserted the girls needed to be in a place where they could grow and be taken care of.

¶ 30                                    b. Schodroski

¶ 31          Schodroski testified that A.C. was removed from respondent mother in March 2019.  At that time, A.C. was placed with Brian and April Hardy but eventually moved to Cathy C.'s care.  Schodroski testified that Cathy C. was A.C.'s paternal grandmother.

¶ 32          Schodroski testified A.C. was doing very well in Cathy C.'s care and Cathy C. and A.C. were very bonded.  Schodroski discussed permanent placement of A.C. with Cathy C., and he represented Cathy C. was committed to both A.C. and her sister.  Schodroski testified there was a 10-year age gap between A.C. and her sister but they were very bonded with each other.

¶ 33          At the time of the best-interest hearing, A.C. was four years old.  A.C. and her sister lived with Cathy C. along with Cathy C.'s two adult daughters and adopted son.  A.C.

shared a room with one of Cathy C.'s adult daughters. Schodroski testified that since respondent's release in August 2019, respondent had been in communication with Schodroski, obtained employment, and maintained stable housing. Schodroski testified it was in the best interest of A.C. to remain with her sister in placement with Cathy C. and have respondent's parental rights terminated.

¶ 34                                    c. Respondent

¶ 35        Respondent testified that an order of protection between him and respondent mother with A.C. listed as a protected party was dismissed in Adams County prior to the best-interest hearing. Respondent testified that since being released from prison in August 2019, he engaged in mental health treatment and treatment concerning alcohol and drug dependency. Respondent also participated in random drug screens where he tested negative for drugs.

¶ 36        Respondent was employed with Rawlins Construction. Respondent also maintained a residence in Beardstown, Illinois. Respondent testified A.C. would have her own room at his residence.

¶ 37                              d.  Trial Court's Finding

¶ 38        After hearing the evidence and recommendations from counsel, the trial court found it was in A.C.'s best interest to terminate respondent's parental rights. The court considered the relevant best-interest factors in reaching its decision.

¶ 39        This appeal followed.

¶ 40                                  II. ANALYSIS

¶ 41        On appeal, respondent argues the trial court erred in finding respondent to be an unfit parent and terminating his parental rights. We address these arguments in turn.

¶ 42                                A. Fitness Finding

¶ 43        In a proceeding to terminate parental rights, the State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004). In making a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). Evidence of unfitness based on any ground enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) is enough to support a finding of unfitness. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Jordan V.*, 347 Ill. App. 3d at 1067. The trial court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.*

¶ 44        The court found respondent unfit where respondent failed to (1) make reasonable progress toward the return of A.C. within any nine-month period after the adjudication of neglect, specifically: March 23, 2016, to December 23, 2016; December 23, 2016, to September 23, 2017; September 23, 2017, to June 23, 2018; and June 23, 2018, to March 23, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2014)) and (2) make reasonable efforts to correct the conditions that were the basis of the removal of A.C. from respondent within nine months after the adjudication of neglect, specifically June 23, 2018, to March 23, 2019 (750 ILCS 50/1(D)(m)(i) (West 2014)).

¶ 45        The trial court's finding that respondent failed to make reasonable progress toward the return of A.C. within any nine months following the adjudication of neglect was not against the manifest weight of the evidence. Reasonable progress is measured by an objective standard that considers the progress made toward the goal of returning the child to the parent. *In re M.A.*, 325 Ill. App. 3d 387, 391, 757 N.E.2d 613, 617 (2001). A parent has made

- 8 -

reasonable progress when "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such quality that the court, in the near future, will be able to order the child returned to parental custody." (Emphasis and internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227.

¶ 46          Respondent argues the trial court's fitness finding that he failed to make reasonable progress toward the return of A.C. during any of the relevant nine-month periods is against the manifest weight of the evidence because he did everything he could to comply with the caseworker's service plan while he was incarcerated, including completing anger management courses, a course on transforming incarcerated dads, a substance abuse class, and parenting class. Respondent argues he had no control over what programs were offered by the DOC and that he could not have failed to make reasonable progress for his failure to take classes not available to him. Respondent relies on *In re Keyon R.*, 2017 IL App (2d) 160657, 73 N.E.3d 616, in support of his argument.

¶ 47          In *Keyon R.*, 2017 IL App (2d) 160657, ¶¶ 10, 12, the trial court found the incarcerated father unfit for failure to make reasonable progress within a nine-month period. The appellate court reversed the trial court's fitness finding where DCFS never assessed the respondent for services and never provided the respondent with a service plan "due to the nature of [the respondent's] crime." (Internal quotation marks omitted.) *Id.* ¶ 30. The appellate court stated, "[t]o use [the] respondent's lack of compliance with nonexistent services—services that were consciously and intentionally withheld—to terminate his parental rights is paradoxical." *Id.* Our case is distinguishable.

¶ 48          Here, the evidence reflected that DCFS provided respondent with a service plan. While respondent engaged in services during his incarceration, respondent was never in a

- 9 -

position to care for A.C. because he was in the DOC.  Further, respondent failed to complete all required services laid out in his service plan.  Given the objective standard applicable pursuant to reasonable progress, respondent's incarceration fails to excuse his lack of progress.  See *In re J.L.*, 236 Ill. 2d 329, 340, 924 N.E.2d 961, 967-68 (2010).

¶ 49       Respondent remained incarcerated during all the relevant nine-month periods except for one month—June 2018.  Respondent never completed services in June 2018 and ultimately ended up being reincarcerated in July 2018 after violating a protection order involving A.C.  The record shows that respondent violated orders of protection and was absent from A.C. due to his own misconduct which led to his incarceration.  While respondent began to engage in services after his release in August 2019, that was after the relevant nine-month periods.

¶ 50       Absent in the record is any indication that the court, in the near future, would have been able to return A.C. to respondent.  Given respondent's failure to complete the required services, we cannot say the trial court's determination respondent failed to make reasonable progress toward having A.C. returned to his care within any relevant nine-month period following the adjudication of neglect was against the manifest weight of the evidence.  Because we have upheld the trial court's findings as to one ground of unfitness, we need not review the other ground.  See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001).

¶ 51                          B. Best-Interest Finding

¶ 52       Once the trial court determines a parent to be unfit, the next stage is to determine whether it is in the best interest of the minor to terminate parental rights.  *In re Jaron Z.*, 348 Ill. App. 3d 239, 261, 810 N.E.2d 108, 126 (2004).  The State must prove by a preponderance of the evidence that termination is in the best interest of the minor.  *Id.*  The trial court's finding will not be overturned unless it is against the manifest weight of the evidence.  *Id.* at 261-62.

- 10 -

¶ 53          In making a best-interest determination, the trial court must consider the factors

set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2018)),

including the child's physical safety and welfare, including food and health; need for

permanence, stability, and continuality; sense of attachment, love, security, and familiarity;

community ties; and the uniqueness of every child.  705 ILCS 405/1-3(4.05) (West 2018).

¶ 54          Respondent argues the trial court failed to consider the relevant best-interest

factors.  Respondent argues the court only considered the physical safety of A.C. and that

respondent previously had an order of protection against him.

¶ 55          We disagree with respondent and find the trial court considered (1) the physical

safety of A.C.; (2) A.C.'s background ties, including family ties, cultural ties, and religious ties;

(3) A.C.'s sense of attachment; (4) A.C's wishes; (5) A.C.'s community ties; and (6) the

uniqueness of the child.  The court found the only consistent thing in A.C.'s life was Cathy C.

who had "always been there and available."

¶ 56          We also find the trial court did not exclusively rely on the physical safety factor in

making its decision to terminate respondent's parental rights.  Moreover, the evidence shows

A.C. was in the care of Cathy C. who has been consistently in A.C.'s life, as opposed to

respondent who has been incarcerated most of A.C.'s life.  Thus, we find the trial court's

termination of respondent's parental rights was not against the manifest weight of the evidence.

Accordingly, we affirm the court's judgment.

¶ 57                                III. CONCLUSION

¶ 58          For the reasons stated, we affirm the trial court's judgment.

¶ 59          Affirmed.